# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | :|
|---|---|
| **DREW FRANCIS**, | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION |
| | : |
| | : NO. 10-4300 |
| **LEHIGH UNIVERSITY**, | : |
| Defendants. | : |

## MEMORANDUM

**Tucker, J.**                                                                                                       **January____, 2011**

Presently before this Court is Defendant Lehigh University's Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 6); Plaintiff Drew Francis's Response in Opposition thereto (Doc. 8) and Defendant's Motion For Leave to Reply (Doc. 9). Upon review of the parties submissions and for the reasons set forth below this Court grants Defendant's Motion to Dismiss Count II of Plaintiff's Complaint. In addition, this Court grants Defendant's Motion For Leave to Reply.

**I.**                                       **BACKGROUND**

**Facts as Alleged in the Complaint**

The instant action stems from circumstances surrounding Plaintiff Drew Francis's ("Francis") termination from Lehigh University. Defendant, Lehigh University is a non-profit corporation created and existing pursuant to the laws of the Commonwealth of Pennsylvania. (Compl. ¶ 3.) Plaintiff brings this suit against Defendant asserting violations of the Americans with Disabilities Act of 1990 and violations of his civil rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

Plaintiff was employed by Defendant as a Professor for approximately fourteen years.

Plaintiff's tenure at Lehigh University began in 1995 and ended on or around February 2010, after he was accused of violating Defendant's sexual harassment policies. (Compl. ¶¶17-21.) On or around June 10, 2009, Plaintiff was informed that termination proceedings would be initiated against him and that he was banned from Lehigh University's campus. (Compl. ¶17.) Shortly thereafter, Plaintiff was further informed that as of September 1, 2009 his salary and benefits would be terminated. (Compl. ¶ 19.) Plaintiff was also advised that should he so desire he should remove any personal property from Defendant's grounds immediately. (Compl. ¶ 19.)

Plaintiff avers that prior to his termination he advised Professor Pam Pepper, his department chair, that he might require surgery on his hand, and consequently would require further accommodation with respect to drawing. (Compl. ¶ 22.) The Complaint alleges that Defendant had previously granted Plaintiff an accommodation because of an ankle injury which prevents Plaintiff from climbing ladders and performing other important job-related activities. (Compl. ¶ 24.) According to Plaintiff, two weeks after his discussion with Pepper regarding his impending surgery she filed the instant charges of sexual harassment against him. (Compl. ¶ 23.)

Plaintiff avers that other similarly situated professors and lecturers who have been charges with violating Defendant's sexual harassment policies, and who have not engaged in a protected activity have not been subject to dismissal for cause. (Compl. ¶ 25.) In fact, Plaintiff alleges that said professors and lecturers have been permitted to sign strict confidentiality letters indicating that they would not violate the policy again. (Compl. ¶ 25.) Accordingly, Plaintiff argues that Lehigh University has treated him in a manner that differs from that in which other similarly situated professors who have violated the sexual harassment policy have been treated. (Compl. ¶ 26.)

With regards to Count II of Plaintiff's Complaint, Francis alleges that Defendant's use of constitutionally infirm termination hearing procedures denied him his right to due process under the Fifth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983. (Compl. ¶ 28, 37.) Specifically, Plaintiff avers that Defendant permitted the introduction of hearsay evidence, denied Plaintiff the right to confront and cross-examine witnesses, denied Plaintiff notice of the charges levied against him and otherwise denied Plaintiff rights secured by the United States Constitution. (Compl. ¶ 28.) Plaintiff alleges that Defendant deprived him of said rights while acting under color of state law. And as a result, Plaintiff sustained loss of his employment and livelihood. (Compl. ¶ 36.) Further Plaintiff avers that his reputation was adversely affected and he has endured great pain and mental suffering. (Compl. ¶ 36.)

## II.                                         LEGAL STANDARD

**Motion to Dismiss Pursuant to Federal Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). In Iqbal the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11

4

(3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged -- but has failed to show -- that the pleader is entitled to relief. Id.

**III.**                               **DISCUSSION**

Count II of Plaintiff's Complaint asserts a Section 1983 claim against Defendant for an alleged violation of Plaintiff's Fourteenth Amendment right to due process. The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard. Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)(internal citations omitted). "Generally, the Fourteenth Amendment protects individuals only against government action, unless the state has delegated authority to a private party, thereby making the actor a 'state actor' and implicating the Due Process Clause." Biener v. Calio, 361 F.3d 206, 216 (3d Cir. 2004) Defendant argues that Count II should be dismissed because Lehigh University is not a state actor within the meaning of Section 1983. The Court agrees.

**A.**     **Absence of State Action Requirement of Section 1983**

Section 1983 is an enabling statute that creates liability against any person who violates any rights, privileges, or immunities secured by the Constitution or laws of the United States while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory or the District of Columbia." 42 U.S.C. § 1983 The test for determining whether someone is acting under "color of law" is virtually identical to evaluating whether there is state action." E., CHEMERINSKY, FEDERAL JURISDICTION, Fifth ed. § 8.3, at 493 (5th ed. 2007); see also U.S. v. Price, 383 U.S. 787, 794, n.7 (1966) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."); Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005) (noting "[w]e consider actions "under color of law" as the equivalent of "state action" under the Fourteenth Amendment.") (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) Thus, to state a claim of liability under § 1983, Plaintiff must allege that he was deprived of a federal constitutional or statutory right by a state actor.

The "under color of law" requirement means that merely private conduct, no matter how discriminatory or wrongful, does not violate Section 1983. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999). Nonetheless, action by a private party will satisfy the "under color" requirement of Section 1983 if the deprivation of a federal right is "fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937(1982). In fact, Supreme Court cases construing the Fourteenth Amendment requirement of state action do not draw a 'simple line' between states and private persons." Leshko, 423 F.3d at 339 (citing Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295,(2001)) To date, the Supreme Court has not developed a uniform test for ascertaining when state action exists and has intimated that a uniform test is impossible. See Reitman v. Mulkey, 387 U.S. 369, 378 (1967).

The Third Circuit has noted that in assessing whether state action is present cases tend to fall within one of two broadly defined factual categories. Leshko, 423 F.3d at 340. "The first

6

category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant." Id. And, "[t]he second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management." Id.

The instant action falls into the first category. In determining whether state action exists, the relevant inquiry is whether "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974) In performing this inquiry, the Third Circuit asks "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (citations, quotations, and alterations omitted).

Plaintiff is correct in its assertion that the determination of a particular entity's status as a "state actor is necessarily a fact-bound determination." (Pl.'s Mot. Opp'n 7) However, that this inquiry is fact intensive does not render it inappropriate for disposition on a motion to dismiss. This Court is mindful that at the Motion to Dismiss stage its inquiry is limited to whether Plaintiff has satisfied the pleading requirements of Fed. R. Civ P. 8. This Court does not opine on the merits of Plaintiff's claim but rather on whether plaintiff has sufficiently plead that Defendant is a state actor and is thereby subject to Section 1983 liability.

1. **Exclusive Province of the State**

With respect to the traditional exclusive government functions' test, the relevant question under this inquiry is not simply whether a private group is serving a public function. Rendell-Baker, 457 U.S. at 842. Rather, "the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the state.'" Id. (citing Jackson, 419 U.S. at 353) "That a private entity performs a function which serves the public does not automatically make its acts state action." Id. A court must evaluate the facts of each case in order to determine whether state action is present.

In the instant action, Defendant cannot be said to have exercised powers that are traditionally the exclusive prerogative of the state. That Lehigh University is engaged the business of education does not automatically render its activities that which are traditionally the exclusive prerogatives of a state. In Rendell-Baker the Supreme Court declined to consider The New Perspectives School, a non-profit institution, a state actor within the meaning of Section 1983 even where it noted that "[t]here can be no doubt that the education of maladjusted high school students is a public function." Id. at 842.

> Other "[c]ourts have applied Rendell-Baker's logic to higher education, and have widely rejected suggestions.... that a private university imbues itself with the color of state authority merely by providing higher education. See Krohn v. Harvard Law Sch., 552 F.2d 21, 24 (1st Cir. 1977) ("[T]he mere offering of an education, regulated by the State, does not imbue [Harvard Law School's] activities with sufficient 'public interest' to render [its] activities governmental in nature."); Cohen v. Illinois Inst. of Tech., 524 F.2d 818, 826 n.24 (7th Cir. 1995) ("We have not overlooked plaintiff's argument that I.I.T., in providing higher educational services, is engaged in a traditionally public function. . . . [T]his argument has been routinely rejected by the courts in private college and university cases."); Greenya v. George Washington Univ., 512 F.2d 556, 561 n.10, 167 U.S. App. D.C. 379 (D.C. Cir. 1975) ("[W]e have considered whether higher education constitutes 'state action' because it is a 'public function' . . . and have concluded that it [does] not."); Fischer v.

> Driscoll, 546 F. Supp. 861, 864 (E.D. Pa. 1982) ("Villanova cannot be performing a public function merely because it is engaged in the business of education.").

Becker v. City Univ. of Seattle, 2010 U.S. Dist. LEXIS 67999, 8-9 (E.D. Pa. 2010) The record does not demonstrate anything uniquely different about Lehigh University's actions that would justify departing from the rationale espoused in the above-mentioned cases. Accordingly, the Court finds that Defendant's acts are not those which are traditionally the exclusive prerogative of the state.

**2.       State Compulsion**

The second test for establishing state action focuses on whether "the private party has acted with the help of or in concert with state officials." Kach, 589 F.3d at 646. Mere approval of, or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible under this test. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Rather, a "State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Id. The Complaint does not contain any allegations that would establish that Lehigh University acted with the help of, or in concert with, state officials with respect to the challenged activity. In attempt to establish that Defendant has acted with the help of state officials Plaintiff asserts that "Defendant is a non-profit corporation created and existing pursuant to the laws of the Commonwealth of Pennsylvania..." (Compl. ¶7) That Defendant has incorporated with the state of Pennsylvania and thereby must adhere to the regulations associated with incorporating does not render it a state actor. Such regulation does not make the conduct of the regulated party state action within the meaning of Section 1983. See

9

Blum, 457 U.S. at 1004 (noting that "'[the] mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'") (citing Jackson, 419 U.S. at 350).

**3.     Joint Participants**

The final test for establishing state action requires that "the state has so insinuated itself with the private actor that it must be recognized as a joint participant in the offending actions." Kach, 589 F.3d at 646.  Plaintiff has not established that state has so far insinuated itself into a position of interdependence with Lehigh University that it must be recognized as a joint participant in the challenged activity.  Plaintiff attempts to demonstrate that Defendant and the state are joint participants by pointing to the following text lifted from Defendants website.

> The Office of Federal Relations facilitates the relationship between the University and federal executives and elected officials in Washington D.C. The staff works closely with the Vice Provost for Research to advance the University research agenda. In recent years, funding for programs and initiatives has been secured from federal agencies such as the U.S. Department of Defense, NASA, National Institutes of Health and the National Science Foundation.
> http://www.lehigh.edu/~incga/federal.html (emphasis added).
>
> The Office of State Relations develops strong alliances with elected officials in the Pennsylvania General Assembly and state agencies under the Governor's jurisdiction in Harrisburg, Pennsylvania. The staff actively works to increase the University's research, education and economic development funding, represent the University's regulatory and legislative interests and enhance Lehigh's statewide reputation. An active State Relations Program helps Lehigh University's ability to drive and contribute to the economic growth of the Lehigh Valley and the Commonwealth of Pennsylvania.
> http://www.lehigh.edu/~incga/state.html (emphasis added).

(Pl.'s Mot. Opp'n 3)

Lehigh University is a private institution. That Defendant receives funding from the state and collaborates with state officials on certain research initiatives is insufficient to establish that

10

Defendant and the state are joint participants in the challenged activity.[1] See, Rendell-Baker, 457 U.S. at 840 (noting that a school's receipt of public funds does not make termination decisions acts of the State). In fact, even where a private school receives nearly all its students from referrals from city school committees or a state agency and was required to comply with various regulations created by the state, in order to receive funding the Supreme Court found that the actions of said school could not be attributed to the state under § 1983. See Id. at 833.

Moreover, it is impossible to make the claim that the state was sufficiently involved in the challenged activity. See Jackson, 419 U.S. 345 (1974) In the present case, while there was some relationship between Lehigh University and the state, it does not rise to the level of a symbiotic relationship such that Defendant's actions can be fairly attributed to the state. See Lugar, 457 U.S. at 937. Defendant's termination hearing procedures and its ultimate decision to terminate Plaintiff were not influenced by the relationships Lehigh University maintains with the state. The record contains no evidence even hinting that a state regulation compelled or influenced the challenged conduct. "The state must either have significant control over an input into the policy-making process of the private institution, or be so involved in the financing and running of the institution that it in effect facilitates the constitutional violation complained of." Wisch v. Sanford School, Inc., 420 F. Supp. 1310, 1313-1314 (D. Del. 1976).

Despite Francis's attempt to transform Lehigh University, a private university into the role of a state actor, his allegations are devoid of sufficient factual content to demonstrate that he can state a claim to relief that is plausible on its face. This Court finds no discernable nexus between the state involvement and the challenged action here. Accordingly, the Court will

---

[1] The Third Circuit has noted that "most courts have been reluctant to impose constitutional and statutory mandates on private universities which receive limited state benefits." Braden v. University of Pittsburgh, 552 F.2d 948, 964 (3d Cir. Pa. 1977).

dismiss Count II of Plaintiff's Complaint.

An appropriate order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**